UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELEANOR FOSMIRE,

        Plaintiff(s),

v.

KOHL'S DEPARTMENT STORES, INC.,

        Defendant(s).

DECISION AND ORDER
07-CV-6027

## Preliminary Statement

On November 17, 2004, plaintiff Eleanor Fosmire, tripped and fell on an elevated curb at the Kohl's Department Store in Greece, New York. The fall broke her hip. Fosmire commenced this personal injury action in New York State Supreme Court in December 2006 and, based on diversity jurisdiction, defendant removed plaintiff's lawsuit to this court in January 2007. (Docket # 1). Currently pending before the Court is defendant's motion for summary judgment. (Docket # 11). The issue before the Court is whether the alleged defect in the pavement that caused Fosmire to trip is too trivial to be actionable.

## Relevant Facts

The facts, viewed in the light most favorable to plaintiff, establish that on November 17, 2004 at approximately 10:00 a.m. eighty year old Fosmire drove to Kohl's Department Store on Ridge Road to shop. Fosmire parked her car in the front of the store, about four parking spots from the entrance. Fosmire's adult

daughter Roberta Heinkel, who had arrived at Kohl's in a separate car, was dropped off in the parking lot near her mother's car. After greeting each other with a hug, the two of them walked towards the front of the store. Fosmire described the weather conditions as "dry," "sunny" and "beautiful." Fosmire was wearing sneakers, carrying a small purse and was following her daughter as she approached the store. See Deposition Transcript of Eleanor Fosmire annexed as Exhibit "B" to Docket # 11 at p. 18-19 (hereinafter "Fosmire Deposition").

Roberta crossed the threshold between the parking lot and the sidewalk first, and, as she did, she "caught [her left] toe [on the elevated threshold] and tripped." See Deposition Transcript of Roberta Heinkel annexed as Exhibit "D" to Docket # 11 at p. 28 (hereinafter "Heinkel Deposition"). Like her mother, Roberta was wearing sneakers or tennis shoes. Id. at p. 28-29. Roberta testified: "I turned to my mother to say 'Be careful. I just tripped,' [but] she was going down." Id. at p. 29. Roberta tried to catch her mother "but she went down fast." Id. at p. 33. Fosmire testified that she "blacked out" after falling and has no direct recollection of what she tripped over. See Fosmire Deposition at p. 25-26, 39. However, people "congregating around" her after the fall, including her daughter, told her she tripped on the curb. Id. at p. 26, 28-29. According to Fosmire she was "walking along not expecting to trip" and was looking "straight

2

ahead" at the time of her fall. Id. at p. 31, 37. Fosmire remained on the ground for a few minutes before she was placed in a wheelchair and brought inside the store. An ambulance was called and Fosmire was transported to the hospital for evaluation and treatment.

On December 2, 2004, Roberta returned to Kohl's in order to take pictures of the area where she and her mother tripped. The photographs, which were used extensively at both Fosmire and Heinkel's depositions, were supplied to the Court for review after oral argument on the summary judgment motion. (The color photographs were taken with Heinkel's digital camera and are marked Exhibit 1,2,3,4,9 and 10.) All but one of the photographs show the area where Fosmire and Roberta fell and four of them (Exhibits 1, 3, 9 and 10) contain notations specifying certain locations, including the spots where Fosmire and her daughter tripped. Exhibit 4 depicts an overview of the Kohl's parking lot. The photographs depict both a crosswalk painted with yellow stripes and a threshold separating the parking lot from the sidewalk. The threshold or curb is unusual in the sense that the elevation of the "lip" is not uniform but rather is a gradual slope. The farther away from the crosswalk, the higher the curb's lip becomes. Shoppers entering the store on the crosswalk would experience no lip or threshold. Shoppers, like plaintiff, entering the store to the left of the crosswalk would have to navigate a lip. The

elevation of the lip is not uniform but rather gradually increases in height. The further away from the crosswalk a shopper chose to cross from the parking lot to the sidewalk, the higher the lip. Both Fosmire and her daughter agree that Fosmire crossed the threshold at a point where the height of the lip was minimal. See Exhibits 1 and 3. Roberta estimated that the sidewalk was approximately a "half inch" higher than the surface of the parking lot. See Heinkel Deposition at p. 38-39.

The color of the area where the sidewalk meets the parking lot is also relevant. The parking lot surface is black in color. The area where the lip or curb begins to slope is painted blue and continues in that color until the elevation has reached a uniform height. The sidewalk surrounding the sloping area of the threshold is painted bright yellow, the same color as the stripes on the crosswalk and also continues in that color until the curb elevation has reached the maximum and uniform height. See Exhibits 1, 3, 9 and 10. Fosmire testified that "you couldn't see ... [the] lip sticking up" at the point where she tripped as "[i]t was invisible to the naked eye." See Fosmire Deposition at p. 22, 24. Roberta Heinkel testified that the color of the surface of the parking lot (black) and the color painted on the lip ("dark blue") were so similar that you could not tell where the pavement met the face of

4

the curb. See Heinkel Deposition at p. 27, 53.[1]

In seeking summary judgment, the defendant argues (1) that the alleged defect in the sidewalk area where plaintiff fell is too trivial to be actionable, and (2) any alleged defect was open, notorious, readily observable to plaintiff and, particularly given its trivial nature, did not cause Kohl's to breach its duty to maintain the property in a reasonably safe condition. See Defendant's Memorandum of Law annexed to Docket # 11. The Court heard oral argument on defendant's motion on November 4, 2008.[2]

### Discussion

**Summary Judgment Standard**: Summary judgment can only be granted if the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return

---

[1] When shown Exhibits 1, 3, 9 and 10 at her deposition, Roberta Heinkel testified that these photographs did not accurately depict the color difference between the blue painted on the lip and the black surface of the parking lot. See Heinkel Deposition at p. 27, 52-53. When shown Exhibits 5 and 7, Heinkel testified that these photographs did accurately depict the shade of dark blue that the lip was painted. Id. at p. 56-58. While the parties did not submit the original photographs marked Exhibits 5 and 7 for the Court to review, Heinkel's deposition testimony does suggest that the pictures Heinkel took do differ in their depiction of the color the lip was painted.

[2] In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court for all dispositive matters, including trial. (Docket # 8).

5

a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The burden of showing the absence of any issue of material fact rests with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**Trivial Defects**: Under New York law, a landowner has a duty to maintain its property in a reasonably safe condition. Whether a dangerous or defective condition exists on the property so as to create liability in negligence "depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." Trincere v. County of Suffolk, 90 N.Y.2d 976, 977 (1997)(citation and quotations omitted). In Trincere, the New York Court of Appeals offered guidance for determining negligence in cases involving a trip and fall on an uneven walkway. The plaintiff in Trincere fell after tripping over a half inch raise of slab outside a municipal office building. The Court of Appeals held that the defect in the sidewalk was too trivial to be actionable. "Not every injury allegedly caused by an elevated brick or slab need be submitted to a jury." Id. at 977. The Court eschewed a mechanistic approach to determining triviality and held that "there is no 'minimal dimension test' or per se rule that a

6

defect must be of a certain minimum height or depth in order to be actionable." Id. Instead, in determining whether a defect is too trivial to be actionable courts must look to the specific facts of each case, "including the width, depth, elevation, irregularity and appearance of the defect along with the time, place and circumstance of the injury." Id. at 978. Where the totality of circumstances demonstrates that a defect is trivial and lacks the characteristics of a trap or a snare, the property owner may not be held liable for damages. Faddoul v. Norton Co., No. 96-CV-0504E(M), 1998 WL 404543, at *2 (W.D.N.Y. July 17, 1998). In making the triviality determination judges often rely on photographs depicting the scene where the injury occurred to help determine whether the defect is actionable as a matter of law. See, e.g., Portanova v. Kantlis, 39 A.D.3d 731 (2d Dept. 2007); D'Nelson v. Costco Wholesale Corp., No. 03 CV 219(CLP), 2006 WL 767866, at *5 (E.D.N.Y. Mar. 24, 2006); Nathan v. City of New Rochelle, 282 A.D.2d 585 (2d Dept. 2001); Figueroa v. Haven Plaza Hous. Dev. Fund Co., 247 A.D.2d 210 (1st Dept. 1998).

**The Alleged Defect at Kohl's**: Although a close question, after reviewing the "totality of circumstances" in the light most favorable to Fosmire, I conclude that plaintiff has produced sufficient evidence to require a jury to make the ultimate determination whether the defect was so trivial as to not be actionable. The unique configuration of the area where the parking

7

lot transitions to the store entrance raises an issue of fact as to whether Kohl's breached its duty to maintain the property in a reasonably safe condition. The photographs confirm that unlike a usual curb which is uniform in height, the lip of the curb separating the parking lot from the sidewalk near the store entrance was sloping gradually towards the level of the pavement. Putting aside the factual issue of whether the paint colors used were sufficiently distinct to warn pedestrian traffic of the approaching lip, the photographs confirm that the closer the store patron was to the striped walkway when she approached the store entrance, the more difficult it would be for the patron to detect that any lip even existed. Here, plaintiff tripped at the point where it would be the most difficult to notice the differentiation in paint color intended to warn her of the approaching height differential. A jury could find the particular sloping lip configuration used by Kohl's to guide pedestrians into its store incorporated a difficult to detect tripping hazard for the unwary customer. "[F]actors which make the defect difficult to detect" require "an assessment of the hazard in view of the peculiar facts and circumstances" and render summary judgment inappropriate. Argenio v. Metro. Transp. Auth., 277 A.D.2d 165, 166 (1st Dept. 2000)(citations and quotations omitted). Indeed, even a trivial defect may amount to an actionable "hazard due to factors which made it difficult to detect." Glickman v. City of New York, 297

A.D.2d at 220, 221 (1st Dept. 2002).

Moreover, in ascertaining triviality, it is appropriate under New York law to consider the site of the defect and specifically whether it is located in an area where members of the public are expected to walk. Where an alleged defect exists in an area close to the entrance of a public building or store, the defect is more likely to constitute a trap for the unwary because the pedestrian's expected attention will be focused on the store entrance and not on navigating height differentials in the pavement. See Tesak v. Marine Midland Bank, 254 A.D.2d 717, 718 (4th Dept. 1998)(Defect "constituted a trap for the unwary because it was located close to the entrance to the bank, where a person's attention would be drawn to the door, not to the sidewalk."); Wilson v. Time Warner Cable, Inc., 6 A.D.3d 801, 802 (3d Dept. 2004)(given the totality of circumstances, including that the alleged defect was located near the defendant's business entrance, plaintiff stated an actionable claim for negligence); see also D'Nelson v. Costco Wholesale Corp., 2006 WL 767866, at *1, *5 (difficult to detect defect in plate at the bottom of an escalator was not trivial because person exiting escalator would not reasonably focus their attention towards the ground as they exited the escalator). These same factors preclude a determination that the alleged defect was so open, notorious and readily observable to plaintiff that summary judgment is appropriate. In sum, I find that enough genuine issues of fact

exist[3] as to preclude the grant of summary judgment. <u>Pagano v. Rite-Aid Corp.</u>, 266 A.D.2d 854, 854-55 (4th Dept. 1999)("Even a small difference in height is actionable if the alleged defect has the characteristics of a trap, snare or nuisance.").

## Conclusion

For the reasons stated herein, defendant's motion for summary judgment (Docket # 11) is **denied**. A trial date status conference will be held with the Court and counsel on April 28, 2009 at 11:00 a.m.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 31, 2009
Rochester, New York

---

[3] In making this determination, I specifically have not considered the affidavit of licensed professional engineer George A. Scardetta (annexed to Docket # 12) because Scardetta was never timely disclosed as an expert witness as required by the Court's scheduling orders.

10